# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEPHANIE A. GIBSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE,[1] ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION** <br> **AND RECOMMENDATION** <br><br> 1:06CV846 |

Plaintiff, Stephanie A. Gibson, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 20, 2003 (protective filing date,

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

July 11, 2003), alleging a disability onset date of May 8, 2002.[2] Tr. 47, 344-45. The applications were denied initially and upon reconsideration. Tr. 24, 25; 348, 349. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 36. Present at the hearing, held on June 2, 2005, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 354.

By decision dated November 3, 2005, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 13. On July 28, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 8, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in section 216(I) of the Act through June 30, 2006.

2. The claimant has not engaged in substantial gainful activity since May 8, 2002.

3. The claimant has the following severe impairments: insulin dependent diabetes mellitus, obstructive sleep apnea, allergic rhinitis, and obesity.

---

[2] Plaintiff filed a previous application in 2002, with the same alleged onset date, which apparently was not pursued beyond its initial denial. See Tr. 59.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, and it is not otherwise contended.

5. Upon careful consideration of the entire record, the ALJ found the claimant has the residual functional capacity (RFC) to perform sedentary work, with some limitations.

6. The claimant is capable of performing past relevant work as a receptionist and a data entry clerk. This work does not require the performance of work-related activities precluded by the claimant's RFC.

7. The claimant has not been under a "disability," as defined in the Act, from May 8, 2002, through the date of the ALJ's decision.

Tr. 17-21.

## **Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to properly assess her mental impairments. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[4]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

---

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[4] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404. All regulatory references will be to Title 20.

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was forty-five years of age.  See Tr. 360.  She has a high school equivalency education, and past relevant work which includes employment as a data entry clerk and a receptionist.  See Tr. 20.  According to the ALJ, Plaintiff initially alleged disability due to diabetes mellitus, depression, arthritis, and a right breast abscess.  Tr. 17.

The ALJ decided that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability.  He also determined that Plaintiff met the disability insured status requirements of the Act through June 30, 2006.  Further, the ALJ found the medical evidence to establish that Plaintiff suffered from several severe impairments, but that none of these impairments, either singly or in combination, met or equaled any of the Listing of Impairments.

Mental Impairments

Plaintiff contends that the ALJ failed to consider her emotional impairments, which affect "her ability to perform basic work related functions."  Pl.'s Br. at 3.  The court will address Plaintiff's many summary objections *seriatim*.

Plaintiff notes first that the ALJ did not mention that she suffered from a "personality disorder."  The court finds this omission to be of no moment, however, as Plaintiff has not explained how she has been harmed.  See, e.g., Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) ("'This court will not vacate a judgment

6

unless the substantial rights of a party have been affected.'") (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988)).

Plaintiff argues that the ALJ erred in failing to follow the technique required by the regulations for evaluation of mental impairments. The regulations provide that SSA will

> first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)[.]

Section 404.1520a(b)(1). In this case, the ALJ cited to Plaintiff's consultative psychiatric examination and its findings that she suffered from psychological impairments. See Tr. 18 (citing Tr. 123-25). He explained that, during the exam, Plaintiff appeared distressed and sometimes cried. Plaintiff reported occasional crying spells at home. Her affect was of somatic preoccupation and sadness, with a feeling of being overwhelmed. Plaintiff sometimes thought of harming herself.

The consultant's report, however, also stated that Plaintiff was able to sustain concentration, and the frequency of her crying spells had improved with medication. Plaintiff believed that her ongoing symptoms of diabetes were her precipitating factors, and she acknowledged that she would not act on suicidal thoughts. Plaintiff exhibited no abnormality of judgment, and was unaware of any memory difficulties. She was oriented to person, place, and time. The consultant did not suggest that

7

Plaintiff seek counseling. The ALJ determined, after a review of all of Plaintiff medical records, that her depression was controlled with medication and medical care.[5]

The regulation then provides that SSA will "rate the degree of functional limitation resulting from the impairment(s)." Section 404.1520a(b)(2). In performing this evaluation, the fact finder should use a five-point scale to rate three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), and then a four-point scale to rate a fourth functional area (episodes of decompensation). Section 404.1520a(c)(3),(4). The regulation is explicit that the ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas." Section 404.1520a(e)(2).

It is conceded that the ALJ failed to set forth his consideration of all four functional areas as required by the regulation. He did, however, conclude that there were no limitations as to the first three functional areas. See Tr. 18 ("Nor does the record reflect any limitations of [Plaintiff's] daily activities, social functioning, or concentration[.]"). Although the ALJ did not address the fourth area, the court notes that the state agency expert found "insufficient evidence" upon which to decide a rating. See Tr. 144. But "[p]rocedural perfection in administrative proceedings is not

---

[5] Plaintiff contends that the ALJ's discussion of the consultant's report does not comport with the regulation as the decision does not contain an "impairment by impairment discussion of clinical signs and symptoms," but the regulation does not set forth such a requirement.

8

required." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988). Such errors "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988). Plaintiff has not suggested how such an oversight would cast doubt upon the ALJ's decision as to her functional limitations.

Plaintiff next complains that the ALJ failed to indicate that her psychiatric symptoms affected her ability to perform work activities. She first notes findings by a state agency expert that her mental impairment caused sleep disturbance, decreased energy, and difficulty concentrating. See Tr. 137. This expert, however, found insufficient evidence to make a determination that Plaintiff suffered from a "severe" mental impairment. See Tr. 134.

An impairment is severe when it "significantly limits" a claimant's physical or mental ability to perform "basic work activities." Section 404.1520(c). In checking off the three cited symptoms, the expert found that Plaintiff suffered from only three of the required four symptoms to support a finding that Plaintiff suffered from an affective disorder. See Tr. 137. Indeed, these symptoms were later specifically tied to Plaintiff's obstructive sleep apnea. See Tr. 292. And after treatment for this disorder, Plaintiff reported improvement in the symptoms. See Tr. 284. Accordingly, these symptoms do not support a finding of severity.

Moreover, the ALJ had a more complete record than the expert on which to base his severity decision. He noted that Plaintiff's depression subsequently was

9

"controlled with medication and ongoing medical care." Tr. 18. From the date of Plaintiff's consultative examination on October 24, 2003, through a doctor's visit on May 28, 2004, Plaintiff's medical records reveal no complaint of psychiatric symptoms. See, e.g., Tr. 237, 242, 250, 252. At her visit for sleep apnea treatment, she complained of memory and concentration problems and of daytime sleepiness, but these were linked to her lack of sleep, and her mood and affect were normal. See Tr. 292-93.

Throughout this period, Plaintiff's psychological state was described as "appropriate." See Tr. 237, 242, 250, 288, 293. Even when Plaintiff stopped taking her antidepressant, she stated that she did not "feel too bad [without] them." Tr. 337. After some time, however, Plaintiff acknowledged that she needed the medication, but resisted its resumption. See Tr. 333-34. By August 27, 2004, she admitted that she had not taken the medication "for months," but stated that her "home situation" was improving, and her depression was better controlled. Tr. 328. Plaintiff's doctor, nevertheless, gave her samples of an antidepressant, Tr. 329, and on November 5, opined that Plaintiff's depression was more stable as a result, Tr. 314.

Thereafter, there are no additional psychological complaints. The record from a January 2005 visit simply lists depression in Plaintiff's past medical history, describing it as "stable." Tr. 307. When Plaintiff presented to the emergency room

10

Case 1:06-cv-00846-WO-WWD   Document 12   Filed 10/29/08   Page 10 of 14

with a hyperglycemic episode in April 2005, her psychiatric state was deemed "appropriate," and she had no psychological complaints.[6] Tr. 280, 283.

Plaintiff points out that the state experts opined that her ability to maintain social functioning and concentration, persistence, or pace were moderately affected by her mental impairments. See Tr. 144. Yet the ALJ disagreed, finding that the record did not "reflect any limitations of her daily activities, social functioning, or concentration due to psychiatric impairments alone." Tr. 18. The record amply supports this determination.

Plaintiff testified that she attended church weekly and taught Sunday School to as many as sixty children, ranging in age from five to twelve years old, from 10:00 a.m. until as late as 1:30 p.m. Tr. 373-74. She participated in a church group and sometimes accompanied her husband on his visits to the sick, about four times per month. Tr. 375. These visits ranged from twenty to sixty minutes. Tr. 376. In addition, she visited a friend, "Debbie," twice a week for a couple of hours. Plaintiff added that she read from thirty to sixty minutes each day and listened to the radio. Tr. 377-78.

Further, none of Plaintiff's SSA submissions attribute any limitations to her mental impairments. Even the consultative examiner observed that Plaintiff exhibited neither memory nor concentration difficulties and, in fact, "sustain[ed]

---

[6] The emergency room form indicates that these would include anxious, hostile, uncooperative, and depressed. See, e.g., Tr. 283.

11

concentration."[7] Tr. 124. And, again, Plaintiff's complaints largely disappeared once she began treatment for her obstructive sleep apnea.

Plaintiff claims that "[i]t is significant that the lower administrative levels specifically found the plaintiff could not return to any of her past relevant work." Pl.'s Br. at 5 (citing Tr. 33). This fact, however, is simply the opposite. The statement to which Plaintiff refers is included in a form letter (SSA-L928-U2), of which certain details are changed for each claimant. See, e.g., Tr. 33. This particular sentence is one that remains unchanged: "We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work." Id. Thus, it has no real significance in Plaintiff's case.

Plaintiff also finds particularly meaningful that an internal SSA form (SSA-831-C3) lists "mood disorders" as her "second most significant impairment." Pl.'s Br. at 5 (citing Tr. 24-25). Again, the court believes Plaintiff has read too much into a standardized form. The court notes that this form provides for only two diagnoses, the "primary diagnosis" for Plaintiff being diabetes mellitus. See Tr. 24, 25. The court finds it more than coincidental that, on her SSA Disability Report, Plaintiff listed her impairments in this same order. See Tr. 63.

---

[7] The court notes that the examiner rated Plaintiff's Global Assessment of Functioning ("GAF") at 70 for the year. A GAF of 61-70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 1994).

Plaintiff contends, "The ALJ's failure to consider [her] mental impairments is inexplicable in light of this evidence." Pl.'s Br. at 5. Yet the court notes that the ALJ *did* consider, in writing, Plaintiff's mental impairments, and substantial evidence supports his treatment of them.

Plaintiff next complains that the ALJ erred in not considering the opinions of the state agency physicians. The state agency consultants and program physicians and psychologists are experts in SSA disability programs, and the regulations require fact finders to consider their findings of fact. Social Security Ruling 96-6p, 61 Fed. Reg. 34466, 34467 (citing 20 C.F.R. § 404.1527(f) and § 416.927(f)). But the ALJ specifically referred to these opinions, using them to support his finding of RFC. See Tr. 20. To the extent that he disagreed with them, the ALJ supported his reasoning with substantial evidence. Cf. Social Security Ruling 96-6p, 61 Fed. Reg. 34466, 34467 (explaining that expert opinions "can be given weight only insofar as they are supported by evidence in the case record"). Because there is no error in the ALJ's RFC decision, he did not err in failing to include mental limitations in his hypothetical to the VE. See, e.g., Howe v. Astrue, 499 F.3d 835, 842 (8th Cir. 2007) (the hypothetical need only reflect those impairments supported by the record); Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (same); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (same); Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999) (same).

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (pleading no. 8) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 10) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

October 29, 2008